UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ISA MARTIN

                                              Plaintiff,

                                        **MEMORANDUM & ORDER**

          -against-

                                        08-CV-5183 (ENV) (JO)

CITY OF NEW YORK, ERIC PENA, RICHARD
ORTIZ, MANUEL SEPULVEDA, ROBERT
WARSHEFSKIE, and JOHN AND JANE DOE 1
through 10, individually and in their official
capacities,

                                      Defendants.
----------------------------------------------------------------x

**VITALIANO, D.J.**

Plaintiff Isa Martin commenced this civil rights action against defendants City of New York, Eric Pena, Richard Ortiz, Manuel Sepulveda, and Robert Warshefskie (all New York City police officers), alleging violations of his civil rights pursuant to 42 U.S.C. §§ 1983 and 1988. All defendants have moved for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has cross moved for partial summary judgment in his favor. For the reasons set forth below, plaintiff's claim fails as a matter of law and, accordingly, partial summary judgment is granted in favor of defendants. The cross motion is denied as well.

### I. BACKGROUND

The following facts are drawn from the amended complaint and the submissions of the parties, including defendants' and plaintiff's statements of undisputed material facts made pursuant to Local Civil Rule 56.1 The facts are construed, as they must be in the summary judgment context, in the light most favorable to Martin as the nonmoving party on the main motion. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 456 (2d Cir.

2007).

On June 13, 2007, Martin was arrested by Pena for possession of a loaded firearm, in violation of New York Penal Law §§ 265.03 and 265.01(1). (See Compl., at ¶ 13; Klein Decl., at ¶ 12.)[1] Two calendar days after his arrest, on June 15, 2007, Martin was arraigned in Staten Island Criminal Court, where Judge Desmond Green set bail at $10,000. (Zuckerman Decl., at ¶ 6).[2] Since plaintiff was unable to immediately post pail, he was remanded to Rikers Island Correctional Facility. (Id. at ¶ 8). While incarcerated, another inmate, Vincent Catty, assaulted him. (Klein Decl., at ¶ 9). Apparently, this incident was not a random act of violence; rather, it was the result of a grudge Catty held against plaintiff because of testimony plaintiff had provided in the past against Catty's relative, John Washington. (Zuckerman Decl., at ¶ 9).[3] Martin suffered numerous injuries in the assault, including a blowout fracture of the inferior orbital wall of his right eye. (Am. Compl., at ¶ 15). Both sides agree that neither plaintiff nor defendants had knowledge of Catty's June 13, 2007 arrest or of his subsequent remand to Rikers Island. (Zuckerman Decl., at ¶¶ 5, 10). When plaintiff arrived at Rikers Island, he did recognize Catty from his neighborhood but did not tell anyone either before or during his incarceration about their history. (Id. at ¶ 10).

Four days after he was arraigned, Martin's family and friends posted bail, (id.), and he was released. (Am. Compl., at ¶ 14). On September 20, 2007, all the charges against him were dismissed. (Am. Compl., at ¶ 16). He commenced this action on December 19, 2008, and filed

---

[1] References to "Klein Decl." denote the declaration of Brett H. Klein in support of plaintiff's cross motion for summary judgment.

[2] References to "Zuckerman Decl." denote the declaration of Mark D. Zuckerman in support of defendant's motion for summary judgment.

[3] During the assault, Catty called Martin a "snitch" for testifying against his relative. (Zuckerman Decl., at ¶ 9).

an amended complaint on July 22, 2009. The complaint sets forth 19 causes of action, nine grounded in federal law and ten supplemental state law claims. All nine federal causes of action—deprivation of rights, excessive force, false arrest and unlawful imprisonment, deprivation of substantive due process, malicious prosecution, unlawful strip search, failure to intervene, supervisory liability, and municipal liability—are pursuant to 42 U.S.C. § 1983. The ten state law claims sound in assault, battery, intentional infliction of emotional distress, negligent screening, hiring, and retention, negligent training and supervision, negligence, false arrest, malicious prosecution, unlawful strip search, and respondeat superior. In anticipation of the instant motion, the parties entered into a stipulation agreeing to conduct limited discovery related to the scope of *damages* for plaintiff's malicious prosecution claim only. All other proceedings, including discovery on the other claims, were stayed pending the determination of the motions currently before the Court.

## II.  STANDARD OF REVIEW

A district court must grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but rather to "determine whether there are issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion, see Sec. Ins. Co. of Hartford v. Old Dominion Freight

3

Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004); Gummo v. Vill. of Depew, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. See George v. Reisdorf Bros., Inc., 10-CV-0798, 10-CV-1208, 2011 U.S. App. LEXIS 2296, at *3 (2d Cir. Feb 3, 2011). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . . [s]ince a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (internal citations omitted).

### III. DISCUSSION

Martin's fifth cause of action alleges that "[d]efendants initiated, commenced and continued a malicious prosecution" against him by "transmitting false and/or misleading information to the Staten Island District Attorney's Office that caused plaintiff to be prosecuted and incarcerated." (Pl.'s Mem. at ¶ 35-36). Stating a claim for malicious prosecution requires a plaintiff to show "that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in

favor of the accused plaintiff." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). Assuming, arguendo, for purposes of this motion, that plaintiff succeeds in establishing liability on his malicious prosecution claim, the issue remains whether the constitutional violation proximately caused the injuries Martin sustained while incarcerated, namely, the fracture of the inferior orbital wall of his right eye.

As a preliminary matter, "[i]ssues of proximate cause are normally questions of fact for the jury to decide, unless the court concludes that a reasonable jury could reach only one conclusion." Packer v. Skid Roe, Inc., 938 F. Supp. 193, 196 (S.D.N.Y. 1996). In cases where there are "independent intervening acts which operate upon but do not flow from the original negligence," issues of proximate cause may be decided on a summary judgment motion. Derdiarian v. Felix Contractor Corp., 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 170, 414 N.E.2d 666, 670 (1980). As to causality, whether by summary disposition or not, the law of torts is the beacon.

Notably, § 1983 was enacted "to adopt to the constitutional context 'the common law of torts [which] has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights.'" Loria v. Gorman, 306 F.3d 1271, 1287 (2d Cir. 2002) (quoting Carey v. Piphus, 435 U.S. 247, 257; 98 S. Ct. 1042, 1049 (1978)) (emphasis added in Loria v. Gorman). Actions brought under § 1983 are similar to tort actions since they both serve to compensate victims, and "[a] § 1983 action, like its state tort analog[ues], employs the principle of proximate causation." Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999). When there is an intervening act or omission that is "extraordinary under the circumstances" and is "not foreseeable in the normal course of events" it may break the causal chain of events and remove liability from an earlier acting defendant. Derdiarian, 51

N.Y.2d at 315; see also Kush v. City of Buffalo, 59 N.Y.2d 26, 33, 462 N.Y.S.2d 831, 835 449 N.E.2d 725, 729 (1983) ("An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant."). An intervening act "must be a new and independent force, which was not set in motion by the defendant's own wrongful acts, and must rise to such a level of culpability as to replace the defendant's negligence as the legal cause."; Zahrey v. City of New York, No. 98-4546, 2009 U.S. Dist. LEXIS 31893, at *16-17 (S.D.N.Y. Apr. 15, 2009) (internal citations and quotation marks omitted).

To begin, Pena's arrest of Martin was certainly a link in the chain of events resulting in plaintiff's eye injuries—had Pena not arrested Martin in the first instance, the attack at Rikers Island would not have occurred. But, unfortunately for plaintiff, this metaphysical relationship is insufficient to impose liability. Indeed, the "chain of events" leading from the intersection of Pena and Martin at plaintiff's arrest to the assault is a long one—Martin allegedly possessed a handgun for which Pena undeniably arrested him, Martin was arraigned and bail was set at $10,000, he was unable to post bail and was remanded to Rikers Island, Catty was contemporaneously arrested and was remanded to Rikers Island himself, and, finally, Catty coincidentally came across and then assaulted plaintiff as a result of yet another independent incident from years prior. The law instructs that each point along this chain constitutes a possible superseding event insulating a prior actor from liability. See Townes, 176 F.3d at 146-47 (holding police officers not liable even though their unreasonable seizure and search was the but for cause of plaintiff's subsequent convictions); Deskovic v. City of Peekskill, 673 F. Supp. 2d. 154, 161 (S.D.N.Y. 2009) ("Even if a Section 1983 defendant's initial act is the but for cause

of some ultimate harm (i.e., the harm would not have happened but for the initial act), he is not legally liable for the harm if an intervening act is a superseding cause that breaks the legal chain of proximate cause.") (quoting Higazy v. Templeton, 505 F.3d 161, 181 (2d Cir. 2007)). Tort law teaches that merely placing a plaintiff in a situation where the ultimate injury can occur simply does not support a finding of proximate causation. See Ventricelli v. Kinney Sys. Rent A Car, Inc., 45 N.Y.2d 950, 952, 411 N.Y.S.2d 555, 556, 383 N.E.2d 1149, 1150 (1978) (holding rental car company liable for its negligence in placing injured party at the site of later accident would have "stretch[ed] the concept of foreseeability beyond acceptable limits"); Marenghi v. N.Y. City Transit Auth., 151 A.D.2d 272, 274, 542 N.Y.S.2d 542, 543 (1st Dep't 1989) (citing Derdiarian, 51 N.Y.2d at 315-16) ("[W]here the allegedly negligent act merely furnishes an occasion for an unrelated act producing an injury, and where the injury is not of the kind to be expected from the negligent act, it may be found that the act of a third party is a superseding cause as a matter of law.").

There can be little dispute that the responsibility for any physical injury to Martin in Correction's custody passed from the arresting officer following Martin's remand by Judge Green. The decision of the arraignment judge to set a $10,000 bail that Martin was unable to post and his remand to Rikers Island, broke the causal chain to his assault injuries because that process of remand itself constituted an "intervening exercise of independent judgment." Townes, 176 F.3d at 147. See, e.g., Wray v. City of New York, 490 F.3d 189 (2d Cir. 2007) (trial judge erroneously admitting evidence broke the chain of causation); Townes, 176 F.3d at 147 (denying a motion to suppress evidence was a superseding cause of plaintiff's conviction and imprisonment); Zahrey, 2009 U.S. Dist. LEXIS 31893, at *12 (holding that incarceration following a bail revocation hearing is not foreseeable when defendants allegedly coerced witness

testimony, though use of the testimony was foreseeable). It is also true that the Second Circuit has noted a "tension [in] the principle that the 'intervening exercise of independent judgment' will break a causal chain, and the principle that defendants in section 1983 cases are liable for consequences caused by 'reasonably foreseeable intervening forces.'" Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000) (quoting Townes, 176 F.3d at 147 and Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989)). And of course, it is basic tort law that "the precise manner in which the harm occurred need not be foreseeable." Sanchez v. State, 99 N.Y.2d 247, 252, 754 N.Y.S.2d 621, 624, 784 N.E.2d 675, 678 (2002) (citing Di Ponzio v. Riordan, 89 N.Y.2d 578, 584, 657 N.Y.S.2d 377, 380, 679 N.E.2d 616, 619 (1997). But, here, the assault and Martin's ultimate injuries were not reasonably foreseeable consequences of his arrest because the "injuries were different in kind than those which would have normally been expected" from the original wrongdoing. Derdiarian, 51 N.Y.2d at 316, 434 N.Y.S.2d at 170, 414 N.E.2d at 671. Score settling in prison obviously occurs, as it does outside prison walls, but, it is not the norm. Prison assault is not a likely consequence of arrest.

At best, Pena's deposition demonstrates that plaintiff's *incarceration* at Rikers Island was a reasonably foreseeable consequence of his arrest since defendants in gun possession cases are often remanded. Pena also conceded that it is common knowledge that fights are not unusual at correctional facilities. Indeed, he was not surprised that plaintiff had been involved in a fight and sustained an injury. Truly, no one disputes that prisons are "dangerous places," Farmer v. Brennan, 511 U.S. 825, 858, 114 S. Ct. 1970, 1990 (Thomas, J., concurring), and that there is a particular risk of inmate-on-inmate violence. See, e.g., Sanchez, 99 N.Y.2d at 254-55, 754 N.Y.S.2d at 625-26, 784 N.E.2d at 679-80 (holding that the State owed duty of care to safeguard inmates from attack by other inmates because such harm was reasonably foreseeable "based on

the institution's expertise or prior experience"). However, absent notice of a specific risk to Martin, there can be no liability, even on the part of correction officers, much less the arresting officer. See Deskovic, 673 F. Supp. 2d at 164 ("Plaintiff has not alleged that there was anything about Plaintiff, 'as distinguished from the [prison population at large,' that the [police department defendants] should have known placed Plaintiff at special risk of sexual assault by a corrections officer."); Smith v. Half Hollow Hills Cent. Sch. Dist., 349 F. Supp. 2d 521, 527 (E.D.N.Y. 2004) (holding student's prior violent record insufficient to put school on notice that he would attack another student because there "lack[ed] a specific threat" to claim defendants breached their duty to plaintiff); Sanchez, 99 N.Y.2d at 256, 754 N.Y.S.2d at 627, 784 N.E.2d at 681 ("The mere occurrence of an inmate assault, without credible evidence that the assault was reasonably foreseeable, cannot establish the negligence of the State."); Leibach v. State, 215 A.D.2d 978, 980, 627 N.Y.S.2d 463, 464 (3rd Dep't 1995) (holding lack of supervision for inmates was not unreasonable given lack of foreseeability because there was no notice of potential problem between specific inmates involved in altercation). Martin himself, it turns out, did not know of the risk (Catty) awaiting him at Rikers Island, and he did not (nor could he) make defendants or anyone else aware of such a risk, so as to constitute notice warranting a finding of foreseeability sufficient to sustain causality. Just the opposite is true, with no material facts in dispute about this given the evidence submitted on the motions: defendants were unaware of Catty's arrest and incarceration—which tragically overlapped with plaintiff's brief stay at Rikers Island—or of the history between Catty and plaintiff.

That inmate-on-inmate assaults happen in prison is as foreseeable as accidents happening to people who drive cars on accident-prone highways. This sort of "foreseeability" does not equate to causality. Merely driving on an accident-prone highway cannot be a substantial factor

in bringing about any subsequent accident. Subsequent independent intervening acts or omissions are the substantial factors in causing injury in any subsequent highway accident or, similarly, to an arrestee assaulted in the custody of someone other than the arresting officer. Even worse for plaintiff here, an intervening criminal act will itself generally sever the chain of events between a defendant's earlier wrongful conduct and a plaintiff's resulting injury, although, of course, liability will still attach if a third party's criminal act was reasonably foreseeable to the earlier acting defendant, e.g. the arresting officer knew Catty had targeted Martin, knew Catty was incarcerated at Rikers Island, and failed to flag Martin for a separation order keeping him away from Catty. See Kush, 59 N.Y.2d at 33, 462 N.Y.S.2d at 835, 449 N.E.2d at 729 (affirming defendant school board's liability for plaintiff's injuries when plaintiff's presence on school grounds and intervening act of student employees was the reasonably foreseeable result of defendant's negligence). But there is nothing in the evidentiary submissions before the Court suggesting that there is a material factual dispute about whether, like the ill-fated car entering the accident-prone highway, it was reasonably foreseeable Correction would fail to protect Martin, much less that Catty's history with Martin was reasonably foreseeable. See Leibach, 215 A.D.2d at 980, 627 N.Y.S.2d at 464 (upholding dismissal of inmate's claim when he failed to show that the state failed to provide adequate supervision to prevent a reasonably foreseeable attack from a fellow inmate when even claimant did not foresee the attack). In short, defendants surely could not have expected that another inmate who held a grudge against plaintiff would have been simultaneously incarcerated at the facility to which Martin would be remanded. This grudge fueled criminal act, and not plaintiff's arrest or remand, appears to be the true "independent force" that solely caused plaintiff's injuries and snapped any chain of causality reaching back to the arrest. Catty's own culpability,

manifestly, supersedes that of defendants, foreclosing a finding of proximate causation. Nothing defendants did or failed to do in arresting Martin was a substantial factor in bringing about the injuries sustained by Martin in Catty's assault. To hold otherwise on these essentially undisputed facts would make the arresting officers responsible for any misfortune befalling an incarcerated arrestee following a claimed false arrest. Well-engrained principles of causality do not countenance such a result.

Consequently, even assuming that Martin can make out a claim for malicious prosecution, his theory of proximate causation seeking to hold defendants liable for injuries independently caused by Catty's assault hits well wide of the mark. No reasonable juror could find otherwise. As a result, defendants' motion for partial summary judgment is granted and plaintiff's cross motion is denied.

The parties are directed to continue with any remaining discovery expeditiously and to move on to bring this litigation to a close.

**SO ORDERED.**

Dated: Brooklyn, New York
June 24, 2011

s/ENV

_____
ERIC N. VITALIANO
United States District Judge